IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| **KENNETH HOLLIS,** ) | |
| ) | |
| *Plaintiff* ) | |
| ) | |
| vs. ) | CASE NO. _____ |
| ) | |
| **MACON COUNTY, TENNESSEE;** ) | |
| **SCOTT CARVER, individually, and in** ) | **JURY DEMAND** |
| his official capacity; **RICHARD** ) | |
| **MILLER, individually, and in his official** ) | |
| capacity; and **CITY OF LAFAYETTE,** ) | |
| **TENNESSEE** ) | |
| ) | |
| *Defendants* ) | |

## COMPLAINT

Kenneth Hollis, as a class of one, by and through undersigned counsel, alleges for his Complaint against Macon County, Tennessee; Scott Carver, individually and in his official capacity; Richard Miller, individually and in his official capacity; and the City of Lafayette, Tennessee (collectively the "Defendants") as follows:

1. Plaintiff Kenneth Hollis (hereinafter "Plaintiff") is a citizen of Macon County, Tennessee and has served as the Mayor of Red Boiling Springs, Tennessee, located in Macon County, Tennessee, since 2017.

2. Defendant Macon County, Tennessee (hereinafter "Macon County") is a governmental entity that is created and existing pursuant to the Constitution and laws of the State of Tennessee.

3. Defendant, City of Lafayette, Tennessee (hereinafter "City of Lafayette") is an incorporated City in the State of Tennessee and is situated within Macon County.

4. Defendant Scott Carver is a codes enforcement officer for the Macon County Codes Enforcement Office and is sued in both his personal and official capacity. At all relevant times herein,

Scott Carver was conducting himself under color of state law for the City of Lafayette and Macon County.

5. Defendant Richard Miller is a codes enforcement officer for the Macon County Codes Enforcement Office and is sued in both his personal and official capacity. At all relevant times herein, Richard Miller was conducting himself under color of state law for the City of Lafayette and Macon County.

## JURISDICTION AND VENUE

6. This Court has the authority to grant declaratory and injunctive relief under 28 U.S.C. § 2201-2202 and Fed. R. Civ. P. 57.

7. The jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiff's claims are predicated upon, among other things, deprivation by the Defendants of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution. Jurisdiction is also conferred supporting claims for attorney's fees by 42 U.S.C. § 1988.

8. Venue is proper under 28 U.S.C. § 1391. The acts or omissions giving rise to Plaintiff's claims occurred in Macon County, Tennessee.

## FACTS

9. Plaintiff has been a building contractor working in the Tennessee counties of Trousdale, Smith, Jackson and Macon for over 30 years. He has built single family homes, multi-family dwellings, townhouses, and commercial properties.

10. Since working as a building contractor, Plaintiff has maintained a State of Tennessee contractor's license.

11. On or about October 1, 2021, the City of Lafayette and Macon County entered into a contract in which the Macon County Codes Enforcement Office agreed to provide building inspection services, codes enforcement services, and other services for land use regulations to the City of

Lafayette in accordance with the building codes adopted by the City of Lafayette. Since that time, the Macon County Codes Enforcement Office has employed only two codes enforcement officers – Defendants Carver and Miller.

12. On or about December 19, 2022, Macon County and the City of Lafayette passed a resolution (hereinafter the "Resolution") adopting the 2018 International Residential Code ("2018 IRC") regulating and governing the construction, alteration, movement, enlargement, replacement, repair, equipment, location, removal and demolition of detached one and two family dwellings and multiple single family dwellings (townhouses) not more than three stories in height with separate means of egress within Macon County, Tennessee and providing for the issuance of permits and collection of fees therefore.

13. The Resolution also replaced the 2018 IRC's definition of "townhouse" with the following definition: A single-family dwelling unit constructed in a group of three (3) or more attached units that extends from the foundation to the roof, separated by a two (2) hour fire resistance rated wall assembly, not more than three (3) stories in height, with a separate means of egress, and an open space or public way on at least two (2) sides.

14. Both before and after the adoption of the Resolution, the building codes adopted by Macon County and the City of Lafayette required individual units in townhouses and duplexes/two-family dwellings to be separated by not less than a two-hour fire resistance rated wall assembly.

15. The Macon County Codes Enforcement Office is responsible for issuing all building permits, enforcing all building codes, and performing all inspections on new construction for Macon County and the City of Lafayette.

16. At all times relevant in the Complaint, Defendants Carver and Miller have served as the only codes enforcement officers for the Macon County Codes Enforcement Office, servicing both Macon County and the City of Lafayette. It is their duty to issue building permits, provide building

inspection services for construction of buildings to ensure compliance with applicable building codes, and enforce building and zoning codes in Macon County and the City of Lafayette.

17. In May 2022, Plaintiff visited the Macon County Codes Enforcement Office to speak with Defendants Carver and Miller regarding townhouses he planned to construct on Nicole Drive in the City of Lafayette (hereinafter the "Nicole Drive Townhouses"). Plaintiff was advised by Defendants Carver and Miller that they were unsure what the Macon County or City of Lafayette building codes required regarding the construction of firewalls. Plaintiff stated that he had plans from Bob Vick Engineering in Cookeville, Tennessee which included firewalls from previous townhouses he had built and that he would use those plans as a guide in constructing the Nicole Drive Townhouses.

18. Evan White, an engineer and President of Mid-Tenn Engineering Company, also advised Plaintiff that his plans for constructing firewalls at the Nicole Drive Townhouses were correct and in compliance with the applicable building codes.

19. Plaintiff advised Defendants Carver and Miller of his conversation with Evan White and stated that he felt confident that his plans for firewall construction at the Nicole Drive Townhouses complied with the applicable building codes. Defendants Carver and Miller did not communicate any objection to Plaintiff's firewall construction plans.

20. The requirements for construction of two-hour firewalls are $^5/_8$ sheetrock on both walls facing in with a ½ inch air gap between them with mud and tape. The outside of each firewall must be constructed with $^5/_8$ drywall from the foundation to the roof decking, and requires being mudded and taped.

21. At the same time that Plaintiff was constructing the Nicole Drive Townhouses, another local building contractor named Chris Tuck, owner of CNT Developers, was constructing
4

townhouses similarly situated to the Nicole Drive Townhouses at 913 and 915 Freeman Street in the City of Lafayette (hereinafter the "Freeman Street Townhouses") without any firewalls.

22. The Freeman Street Townhouses are similarly situated in all relevant aspects to the Nicole Drive Townhouses constructed by Plaintiff, in that both properties are residential townhouses located in the City of Lafayette, constructed by local contractors for lease, with the same zoning designations.

23. In July of 2022, a plumber named Bruce Bartley contacted Plaintiff to discuss an issue that occurred at a property in Red Boiling Springs, Tennessee, where Plaintiff serves as Mayor. Mr. Bartley advised that he had performed wiring and plumbing services on the property and the owner of the property had told Mr. Bartley that Defendants Miller and Carver were being unprofessional.

24. Mr. Bartley further advised Plaintiff that Defendants Miller and Carver had approved the rough-in inspection at the property, but then required him to change all the S-traps at the property to P-traps before they would issue a final approval. Mr. Bartley asserted that he knew for a fact that Defendants Carver and Miller had approved S-traps on a similar property built by Chris Tuck, allowing Mr. Tuck to avoid the costly plumbing changes that Mr. Bartley was forced to make.

25. Plaintiff discussed Mr. Bartley's concerns with Defendants Miller and Carver in an effort to resolve the situation. During the conversation, Defendant Carver responded by stating that it was none of Plaintiff's business. This exchange created a rift in the relationship between Plaintiff and Defendants Carver and Miller going forward.

26. Following the conversation, Defendants Miller and Carver began behaving unusually toward Plaintiff. Defendant Miller questioned Plaintiff, asking why he believed it was appropriate to inquire about Mr. Bartley's inspections. Plaintiff explained that, as the Mayor of Red Boiling Springs – the jurisdiction in which the property is located – he was merely attempting to assist Mr. Bartley in resolving the issue.

27. On or about September 26, 2022, Defendants Carver and Miller conducted an inspection of the first six units of Plaintiff's Nicole Drive Townhouses in the City of Lafayette, which had been constructed with two-hour firewalls in accordance with Plaintiff's plans. Following the inspection, Defendants Carver and Miller stated that the units failed to meet building code requirements due to deficiencies in the firewalls. In response, Plaintiff spent approximately six weeks installing additional sheetrock, mud, and tape to satisfy the conditions imposed by Defendants Carver and Miller. These modifications caused unnecessary and unreasonable delays and expenses, hindering Plaintiff's ability to complete and begin renting the Nicole Drive Townhouses.

28. The decision by Defendants Carver and Miller not to approve the inspection of Plaintiff's Nicole Drive Townhouses based on alleged firewall deficiencies was improperly motivated by animus and ill will toward Plaintiff.

29. While Plaintiff was required to incur additional time and expense to revise the firewalls in the Nicole Drive Townhouses, Plaintiff personally observed that the similarly situated Freeman Street Townhouses were constructed without any firewalls. Similarly, Chris Tuck constructed a duplex at 601 Haley Street, in the City of Lafayette, without incorporating firewalls. Despite the complete absence of firewalls, both the Freeman Street Townhouses and 601 Haley Street passed final inspections conducted by Defendants Miller and Carver and were issued certificates of occupancy.

30. In or around September 2022, Plaintiff spoke with Macon County Mayor Steve Jones regarding the inconsistent and arbitrary enforcement of the building codes by Defendants Carver and Miller, including the complete absence of any firewalls in the similarly situated Freeman Street Townhouses. There was no rational basis for Defendants Miller and Carver to demand that Plaintiff follow heightened standards for the construction of firewalls, while they issued a certificate of occupancy to the similarly situated Freeman Street Townhouses that did not include any firewalls at all.

31. As a result of his conversation with Plaintiff, Mayor Steve Jones spoke with Defendants Miller and Carver about Plaintiff's concerns regarding the inconsistency of their enforcement of the building code.

32. Following Plaintiff's conversation with the Macon County Mayor, Chris Tuck called Plaintiff to ask how he was constructing firewalls and stated that he felt Defendants Miller and Carver were picking on him regarding firewalls they were requiring him to add to a townhouse he was constructing next to the Freeman Street Townhouses, at 911 Freeman Street in Lafayette. Plaintiff advised Mr. Tuck how he was constructing the firewalls in his own townhouses, but Mr. Tuck's statements seemed odd as Plaintiff knew that Mr. Tuck had constructed the Freeman Street Townhouses without any firewalls, and that they had passed the codes inspections conducted by Defendant Miller and Carver.

33. Mayor Steve Jones contacted Gary Farley, Tennessee's Assistant Commissioner for Fire Prevention, to relay Plaintiff's concerns about the arbitrary enforcement of building codes by Defendants Carver and Miller, particularly their issuance of certificates of occupancy for townhouses constructed without firewalls. In response, Mr. Farley requested that George Smith, a Fire and Building Code Inspector Manager with the Tennessee State Fire Marshal's Office, investigate the matter.

34. On or about October 20, 2022, representatives from the State Fire Marshal's Office, including George Smith, met with Defendants Carver and Miller at the Macon County Codes Enforcement Offices to address Plaintiff's complaints.

35. Upon information and belief, Defendants Carver and Miller took representatives from the Fire Marshal's Office to view the firewalls at 911 Freeman Street—the property where Mr. Tuck had informed Plaintiff that Defendants Carver and Miller were requiring him to construct firewalls— rather than the completed Freeman Street Townhouses. Because construction of the Freeman Street

7

Townhouses was already complete, it was impossible to visually verify the presence of the required firewalls without cutting into the walls of the structures.

36. Defendants Carver and Miller falsely communicated to the representatives from the Fire Marshal's Office that the appropriate firewalls had been constructed at the Freeman Street Townhouses.

37. On or about November 10, 2022, Plaintiff requested that Defendant Carver perform a rough-in inspection of the most recently constructed units at the Nicole Drive Townhouses. Defendant Carver remained unsatisfied, rejected the two-hour firewalls installed by Plaintiff, and insisted that additional sheetrock be added to the ceiling areas near the roof, claiming the existing installation was off by a few inches. These alleged deficiencies had never previously been cited as issues by Defendants Carver or Miller in connection with any of the earlier townhouses Plaintiff constructed prior to their July 2022 discussion regarding Mr. Bartley's concerns.

38. At a community park opening in Red Boiling Springs, Tennessee on or about the morning of November 21, 2022, Plaintiff had another discussion with Macon County Mayor Jones about Defendants Miller and Carver's inconsistent and arbitrary enforcement of the building codes. Mayor Jones informed Plaintiff that there was nothing more he could do about it.

39. On or about November 21, 2022, Plaintiff learned that Defendant Carver had entered the Nicole Drive Townhouses that day despite the fact that he was not invited on to the property and no inspection had been requested by Plaintiff.

40. On or about August 30, 2023, Plaintiff filed a lawsuit against Macon County, Scott Carver, and Richard Miller in the United States District Court for the Middle District of Tennessee, identified as Case No. 2:23-cv-00053 (hereinafter the "Prior Lawsuit").

41. After the Prior Lawsuit was filed, the Defendants' attorney communicated to Plaintiff's counsel that Plaintiff could continue to purchase permits from the Macon County Codes

Enforcement Office, but that Defendants Carver and Miller would no longer perform inspections for Plaintiff's properties and that he would need to hire independent inspectors to perform all future inspections of his properties. The Official Zoning Code of Macon County states that the Codes Enforcement Officer shall conduct all inspections and compliance and make and maintain records thereof.

42. The permit fee paid to the Macon County Codes Enforcement Office covers the cost of all required inspections to ensure the project meets building codes and safety standards.

43. On October 8, 2024 counsel for Plaintiff and Defendants filed a Stipulation of Dismissal, dismissing the Prior Lawsuit without prejudice.

44. Despite the voluntary dismissal of the Prior Lawsuit, Defendants Carver and Miller have continued to refuse to perform inspections on any properties owned by Plaintiff. As a result, Plaintiff has been forced to incur additional expenses by hiring an independent professional to conduct inspections, even though he had already paid for those services when purchasing building permits from the Macon County Codes Enforcement Office.

45. Defendants, jointly and severally, individually and collectively through Defendants Carver and Miller, have required Plaintiff to add considerable time and expense to his building projects by their selective enforcement of building codes, while failing to enforce the same alleged requirements on contractors constructing similarly situated properties, including but not limited to the Freeman Street Townhouses.

46. Defendants Macon County and the City of Lafayette, and its elected officials, jointly and severally, maintained a deliberate indifference to the Constitutional rights of Plaintiff.

47. Defendants Carver and Miller, jointly and severally, individually and collectively, failed to uniformly enforce the building codes of Macon County and the City of Lafayette. Accordingly, Defendants Carver and Miller impermissibly conferred a benefit upon certain contractors in Macon

County while denying the same benefit to Plaintiff without any reasonable basis for the disparate action.

## Actions by Defendants Scott Carver and Richard Miller

48. Defendants Carver and Miller, in their individual and official capacities, approved inspections and issued certificates of occupancy for properties similarly situated to those owned and developed by Plaintiff – including, but not limited to, the Freeman Street Townhouses – despite the complete absence of required firewalls, while simultaneously subjecting Plaintiff to heightened building code standards during the same time period.

49. The purposeful discrimination utilized by Defendants Carver and Miller's vindictive enforcement of an unjustifiable, heightened building code standard against Plaintiff is in retaliation for Plaintiff exercising his constitutional right to criticize the government after he addressed Bruce Bartley's concerns with them and after he reported their failure to follow the building codes to the Macon County Mayor and Tennessee State Fire Marshal.

50. Defendants Carver and Miller's continued refusal to perform inspection services for Plaintiff's properties, despite the purchase and issuance of valid building permits, constitutes retaliation for Plaintiff's filing of the Prior Lawsuit and for exercising his constitutional right to criticize the government.

## Lack of Accountability by Macon County, Tennessee

51. Defendant Macon County, and its elected officials, jointly and severally, individually and collectively, knew, or should have known, that there was no system or procedure in place for reporting, investigating, or remediating incidents involving constitutional violations and harassment of Macon County residents by the Macon County Codes Enforcement Office other than litigation.

52. Despite Plaintiff's repeated communication of concerns to the Mayor of Macon County, Defendants Carver and Miller continued to enforce building codes on Plaintiff's properties in an arbitrary and vindictive manner, rather than with consistency and professionalism.

53. This lack of accountability from Macon County to ensure its codes enforcement officers maintain professional standards and consistently enforce its building codes allowed Defendants Carver and Miller to arbitrarily permit certain building contractors to disregard building codes, endangering the lives of the occupants who inhabit those residential properties, while discriminately requiring Plaintiff to maintain construction standards above and beyond those required by the building codes.

54. Macon County failed to properly hire, train, supervise and/or discipline its codes enforcement officers amounting to a deliberate indifference to the rights and safety of its citizens.

### Lack of Accountability by City of Lafayette, Tennessee

55. Defendant City of Lafayette, and its elected officials, jointly and severally, individually and collectively, knew, or should have known, that there was no system or procedure in place for reporting, investigating, or remediating incidents involving constitutional violations and harassment of the residents of the City of Lafayette by the Macon County Codes Enforcement Office other than litigation.

56. This lack of accountability by the City of Lafayette to ensure its codes enforcement officers maintain professional standards and consistently enforce its building codes allowed Defendants Carver and Miller to arbitrarily permit certain building contractors to disregard building codes, endangering the lives of the occupants who inhabit those residential properties, while discriminately requiring Plaintiff to maintain construction standards above and beyond those required by the building codes.

57. The City of Lafayette failed to properly hire, train, supervise and/or discipline its codes enforcement officers amounting to a deliberate indifference to the rights and safety of its citizens.

## CAUSES OF ACTION

### COUNT I
### Violation of Constitutional Right to Substantive Due Process - 42 U.S.C. § 1983, Fourteenth Amendment to the U.S. Constitution

58. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

59. By taking the actions alleged above, Defendants Carver and Miller, under color of state law, deprived Plaintiff of his property and/or liberty interest, without providing Plaintiff with Constitutionally sufficient due process, in violation of the Fourteenth Amendment to the United States Constitution.

60. The deprivation of Plaintiff's Constitutionally-protected property and/or liberty interests without due process was caused by the conduct of Defendants Miller and Carver, in their individual and official capacities, and as final policy-makers for Defendant Macon County and the City of Lafayette Codes Enforcement Office.

61. Despite being on notice of the egregious and unlawful conduct of Defendants Miller and Carver, Defendants Macon County and the City of Lafayette have at all times remained deliberately indifferent to Plaintiff's Constitutional and legal rights and have maintained conditions and practices that constitute punishment and that are a substantial departure from accepted professional judgment, practices, and standards.

62. The actions of Defendants Carver and Miller were malicious, deliberate, intentional, and embarked upon with the knowledge of, or a callous and reckless indifference to, the rights of Plaintiff. As a result of said intentional conduct, Plaintiff is entitled to punitive damages in an amount sufficient to punish Defendants Carver and Miller and to deter others from similar conduct.

63. Plaintiff was required to hire an attorney to represent him in this matter and the Prior Lawsuit and is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

64. The acts and omissions of Defendants, as alleged herein, have caused Plaintiff to suffer both economic and non-economic damages in an amount to be determined at trial.

## COUNT II
### (Equal Protection – "Class of One" 42 U.S.C. § 1983, Fourteenth Amendment to the U.S. Constitution)

65. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

66. As a result of the acts and omissions of Defendants alleged above, Plaintiff has been treated differently from similarly situated building contractors, under color of state law and deprived of the equal protection of the law in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution in that:

    a. Compared with other similarly situated building contractors constructing similarly situated residential properties in Macon County and the City of Lafayette, Defendants Carver and Miller selectively enforced the building codes purposefully and adversely against Plaintiff, with no rational basis for the discriminatory treatment of Plaintiff;

    b. Such adverse, selective treatment is predicated on impermissible consideration by Defendants Carver and Miller, in violation of Plaintiff's Constitutional rights and further based on those Defendants' malicious and bad faith intent to cause injury to Plaintiff and his property; and

    c. Such unequal treatment and adverse selective enforcement violate Plaintiff's rights and Plaintiff will continue to suffer from the Defendants' unequal treatment of the law pursuant to 42 U.S.C. § 1983 *et. seq.*

67. By their acts and omissions; including the failure of Macon County and the City of Lafayette to adopt adequate policies and procedures and their failure to supervise and to train their

employees and agents; Defendants, without adequate justification and motivated by a spiteful effort to punish Plaintiff for reasons wholly unrelated to any legitimate State objective, discriminated against Plaintiff.

68. Defendants Miller and Carver intentionally treated Plaintiff differently from others similarly situated and there was no rational basis for the difference in treatment, violating the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

69. Defendants acted with deliberate indifference to the known or obvious consequences to Plaintiff of harassment and/or discrimination, including actual harm and pervasive risk of harm, in violation of the Fourteenth Amendment of the United States Constitution.

70. Plaintiff seeks a judgment declaring that the acts, omissions, policies and practices complained of herein are prohibited by the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

71. The actions of Defendants Carver and Miller were malicious, deliberate, intentional, and embarked upon with the knowledge of, or a callous and reckless indifference to, the rights of Plaintiff; and as a result of said intentional conduct, Plaintiff is entitled to punitive damages in an amount sufficient to punish the individual Defendants and to deter others from similar conduct.

72. Plaintiff was required to hire an attorney to represent him in this matter and the Prior Lawsuit and is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

73. The acts and omissions of Defendants, as alleged herein, have caused Plaintiff to suffer both economic and non-economic damages in an amount to be determined at trial.

**COUNT III**
**Violation of Constitutional Right to Free Speech -**
**42 U.S.C. § 1983, First Amendment to the U.S. Constitution)**

74. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

75. Plaintiff engaged in Constitutionally protected speech by reporting the discriminatory acts and omissions of government officials – Defendants Miller and Carver – to the Macon County Mayor and by filing the Prior Lawsuit.

76. In retaliation for Plaintiff's exercise of his Constitutionally protected right to free speech, Defendants Miller and Carver selectively enforced building codes against Plaintiff's properties, denied Plaintiff benefits they conferred upon similarly situated individuals, and refused – and continue to refuse – to provide inspection services for properties for which Plaintiff has lawfully purchased building permits from Macon County.

77. The actions of Defendants Carver and Miller were malicious, deliberate, intentional, and embarked upon with the knowledge of, or a callous and reckless indifference to, the rights of Plaintiff; and as a result of said intentional conduct, Plaintiff is entitled to punitive damages in an amount sufficient to punish the individual Defendants and to deter others from similar conduct.

78. Plaintiff was required to hire an attorney to represent him in this matter and the Prior Lawsuit and is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

79. The acts and omissions of Defendants, as alleged herein, have caused Plaintiff to suffer both economic and non-economic damages in an amount to be determined at trial.

## JURY TRIAL DEMANDED

80. Plaintiff hereby demands a jury trial for the allegations and causes of action set forth herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court award the following damages, jointly and severally against Defendants, as provided by the laws of the United States and the State of Tennessee, including but not limited to the following:

a. Compensatory, actual, and consequential damages to Plaintiff, exclusive of interests and costs;

b. Costs of this action and attorneys' fees to Plaintiff as allowed by the application of 42 U.S.C. § 1988;

c. Equitable relief, including, where deemed appropriate, injunctive relief;

d. Punitive damages where permitted by statute; and

e. Any and all other and further relief as this Court may deem appropriate.


Dated: October 6, 2025

Respectfully submitted,

/s/ J. Michael Clemons
J. Michael Clemons, #24362
John Ray Clemmons, #25907
**CLEMMONS & CLEMONS, PLLC**
414 Union Street, Suite 1900
Nashville, Tennessee 37219
Telephone: (615) 823-1201
Email: michael@clemlawfirm.com
   johnray@clemlawfirm.com
*Attorneys for Plaintiff*